## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOSEPH H. RUDNICK,<br>STREET ADDRESS WITHHELD<br>CITY AND STATE WITHHELD[1]<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION<br>935 Pennsylvania Avenue, NW<br>Washington, D.C. 20535-0001;<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 26-00131 |

## COMPLAINT

## PRELIMINARY STATEMENT

Plaintiff Joseph H. Rudnick ("Plaintiff") brings this action against Defendant Federal Bureau of Investigation ("FBI").

Plaintiff served as an FBI special agent. He had a successful career investigating counterterrorism, rising to the position of assistant section chief. He served as a police officer for five years prior to the FBI. After he was falsely accused of wrongdoing that did not involve national security matters, the FBI suspended his clearance to access classified material pending a security clearance investigation.

The FBI suspended Plaintiff's clearance to access classified information, even though there

---

[1] Plaintiff requests that his residence address be filed under seal. Pursuant to Local Civ. Rule 5.1(c), he shall file a motion for leave to file notice of address under seal simultaneously with this complaint.

1

is no authority to suspend clearances in the Executive Orders or regulations regarding eligibility to access classified material. The FBI had favorably adjudicated Plaintiff's periodic security re-investigation less than six months earlier. The FBI also did not follow the procedures to revoke his clearance in the applicable Executive Order and Code of Federal Regulations ("C.F.R"). Even though the FBI Employment Agreement says nothing about requiring an employee to maintain a security clearance and even though two executive orders and the C.F.R. bar an agency from requiring an employee to have access to classified material without a need-to-know that information, the FBI used the suspension of Plaintiff's eligibility to access classified material as a basis to suspend him indefinitely from his employment with the FBI without pay.

After the FBI's Office of Professional Responsibility determined that the allegation precipitating the clearance suspension was unsubstantiated, and Plaintiff would not lose his job as a result of the alleged wrongdoing, the FBI revoked his security clearance anyway in an apparent effort to remove him from FBI employment through another means.

The Plaintiff seeks declaratory and injunctive relief.

In support of this action, upon personal knowledge as well as information and belief, the Plaintiff alleges the following:

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, as this action arises under Article II of the United States Constitution, the Fifth Amendment to the United States Constitution, and the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A), (B), and (D) to challenge unlawful actions of an agency of the United States.

2.      Sovereign immunity for non-monetary relief is waived by 5 U.S.C. § 702, and by the fact that the FBI acted in excess of constitutional authority and in violation of constitutional

rights. This Court may award injunctive relief pursuant to its inherent equitable jurisdiction and declaratory relief under the Declaratory Judgment Act, 5 U.S.C. § 2201.

3.    Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391.

## PLAINTIFF

4.    Plaintiff Joseph H. Rudnick ("Plaintiff") is a citizen of the United States. He does not reside in the District of Columbia.

## DEFENDANT

5.    Defendant Federal Bureau of Investigation ("FBI") is the agency that employed Plaintiff and claims that it has the authority to suspend employees' security clearances and consequently suspend them indefinitely without pay. The FBI is a component of the U.S. Department of Justice ("DOJ") and is subject to DOJ's regulations. The FBI is headquartered in Washington, D.C.

## FACTS

### I.    FBI EMPLOYMENT PROTECTIONS.

6.    Title 5 U.S.C. § 2301 established the Merit System Principles applicable to all Executive agencies, including the principle that "[e]mployees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards." 5 U.S.C. § 2301(b)(6). Under the Merit System Principles, employees should also be "protected against arbitrary action [and] personal favoritism." 5 U.S.C. § 2301(b)(8)(A).

7.    Section 2301 also directs that the head of any agency that is excepted from civil service protections in 5 U.S.C. § 2302 (the FBI is one of those excepted agencies) "shall, pursuant to authority otherwise available, take any action, including the issuance of rules, regulations, or

directives; which is consistent with the provisions of this title and which the President or the head, as the case may be, determines is necessary to ensure that personnel management is based on and embodies the merit system principles." 5 U.S.C. § 2301(c)(2).

8.     Following the Merit System Principles in 5 U.S.C § 2301, the FBI has developed an elaborate disciplinary process. The FBI makes available to employees a document entitled *The FBI's Disciplinary Process: Explanation of Process*, which is publicly available after it was obtained pursuant to a Freedom of Information Act ("FOIA") request. *See* https://accountabilityfbi.org/index.php/2023/01/09/fbi-disciplinary-process-explanation-of-process/ (last accessed January 14, 2026). In that explanation, the FBI notifies employees that if an employee is alleged to have engaged in misconduct, the FBI's Inspection Division or the DOJ Office of the Inspector General ("OIG") "will review the allegation to decide whether the allegation is sufficiently serious and credible to warrant an investigation." If an investigation is warranted, after its completion, "the matter will be referred to [the FBI's Office of Professional Responsibility ("OPR")] for further action." OPR's staff "will review all investigative materials and prepare a report discussing the allegations, relevant facts, applicable policies, rules, regulations, laws, or other legal standards, and make a finding as to whether the employee violated an FBI Offense Code . . . ." "OPR will also prepare a document informing the employee of OPR's decision." For proposed suspensions of fourteen days or less, the employee may appeal to the Executive Assistant Director of the Human Resources Branch. "The suspension is stayed (not imposed) during the pendency of an appeal." For proposed punishments greater than a fourteen-day suspension, including demotions or dismissals, "the employee is provided additional procedural protections to ensure the correct decision is reached." "The employee will first receive a 'proposal letter' . . . that advises the employee of OPR's findings and identifies the specific FBI Offense Code the employee is believed to have violated, as well as OPR's proposed penalty." The

proposal letter will advise the employee that they have ten days to advise OPR whether the employee wishes to invoke their procedural protections. The procedural protections include the opportunity to review their OPR file related to their case, to prepare a written response to OPR's proposed findings, and to make an oral presentation to the Assistant Director of OPR. The employee may also retain outside counsel. The employee's written response is due within ten days of receipt of OPR's proposal letter or after the employee has been provided access to the case materials. Preference-eligible veterans have appeal rights to the Merit Systems Protection Board. The FBI does not grant probationary employees the right to appeal an OPR disciplinary action.

9. The FBI also has a policy directive available to employees entitled *OPR Statement of Authorities and Responsibilities*, which is publicly available after it was obtained pursuant to a FOIA request. *See* https://accountabilityfbi.org/index.php/2023/01/09/fbi-office-of-professional-responsibility-statement-of-authorities-and-responsibilities/ (last accessed January 14, 2026). In that policy directive, the FBI cites 5 U.S.C. § 301 to establish that the "[h]ead of an Executive department may prescribe regulations including the conduct of its employees." The directive also states the following: "OPR was created to expeditiously and impartially adjudicate allegations of employee misconduct;" "OPR ensures that the FBI maintains its rigorous standards of integrity and professionalism by impartially adjudicating allegations of employee misconduct;" and OPR "[e]ngenders an organizational spirit of fairness by evenhandedly applying the same standards to all employees regardless of rank or job title." The Assistant Director of OPR is responsible for "[a]djudicating allegations of employee misconduct by thoroughly reviewing the investigative file to determine whether, by a preponderance of the evidence, the allegation against the employee has been substantiated and, if so, deciding the appropriate disciplinary penalty based on the FBI's Penalty Guidelines," and "[c]onducting extensive employee training regarding OPR's policies and procedures, including, but not limited to: (a) [entry on duty] training; (b) Quantico training (new

agent and other); . . . (d) Field Office Training . . . ."

10.    For disciplinary purposes, an FBI employee proposed for a suspension of greater than sixty days is proposed for dismissal, so generally an employee spends no more than two months suspended for disciplinary purposes at one time.

11.    The FBI's employment agreement is referred to as an FD-291. FBI, *FD-291 Employment Agreement*, Exhibit A, incorporated by reference as if fully set forth herein ("<u>FBI Employment Agreement</u>"). Although the FBI Employment Agreement does not state whether employees are at-will employees at any time during their employment, the Plaintiff understood that he could be fired at will from the FBI while he served during his probationary period. Plaintiff successfully completed his probationary period during approximately February 2015. After completing his probationary period, the Plaintiff understood that he could only be removed from the FBI for cause.

## II.    EXECUTIVE ORDERS, PROVISIONS OF THE FBI EMPLOYMENT AGREEMENT, AND STATUTES AND REGULATIONS REGARDING SECURITY CLEARANCES AND CLASSIFIED MATERIAL.

12.    Under Executive Order No. 13,526 § 1.1(a)(4), 75 Fed. Reg. 707 (Jan. 5, 2010), information may only be classified if, among other requirements, "the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage." Classified material must be marked with the level of classification (Confidential, Secret, or Top Secret), the identity of the original classification authority, and declassification instructions. 75 Fed. Reg. 707–08, 709–10.

13.    Under Executive Order No. 13,526 § 4.1(a)(3), only individuals with a "need-to-know" are allowed to have access to classified material. 75 Fed. Reg. 720.

14.     Executive Order No. 12,968, 60 Fed. Reg. 40245 (Aug. 2, 1995) "establishes a uniform Federal personnel security program for employees who will be considered for initial or continued access to classified information."

15.     Section 1.1(h) of Executive Order No. 12,968 defines "need-to-know" as "a determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." 60 Fed. Reg. 40246.

16.     Section 1.2(a) of Executive Order No. 12,968 mandates, "No employee shall be granted access to classified information unless that employee has been determined to be eligible in accordance with this order and to possess a need-to-know." *Id.*

17.     Under Executive Order No. 12,968 § 1.2(c), "Employees shall not be granted access to classified information unless they: (1) have been determined to be eligible for access under section 3.1 of this order by agency heads or designated officials based upon a favorable adjudication of an appropriate investigation of the employee's background; (2) have a demonstrated need-to-know; and (3) have signed an approved nondisclosure agreement." *Id.*

18.     Executive Order No. 12,968 § 2.1 also mandates the following:

(a) Determinations of eligibility for access to classified information shall be based on criteria established under this order. Such determinations are separate from suitability determinations with respect to the hiring or retention of persons for employment by the government or any other personnel actions.

(b) The number of employees that each agency determines are eligible for access to classified information shall be kept to the minimum required for the conduct of agency functions.

    (1) Eligibility for access to classified information shall not be requested or granted solely to permit entry to, or ease of movement within, controlled areas when the employee has no need for access and access to classified information may reasonably be prevented. Where circumstances indicate employees may be inadvertently exposed to classified information in the course of their duties,

agencies are authorized to grant or deny, in their discretion, facility access approvals to such employees based on an appropriate level of investigation as determined by each agency.

60 Fed. Reg. 40248.

19.     Under § 2.1(b)(2), "Except in agencies where eligibility for access is a mandatory condition of employment, eligibility for access to classified information shall only be requested or granted based on a demonstrated, foreseeable need for access. Requesting or approving eligibility in excess of actual requirements is prohibited." *Id.*

20.     Just as there are three levels of classification, Executive Order No. 12,968 § 2.2(a) allows for different levels of access approval, and "[t]he level at which an access approval is granted for an employee shall be limited, and relate directly, to the level of classified information for which there is a need for access." *Id.*

21.     Executive Order No. 12,968 § 3.1(f) mandates that an Executive Branch entity "develop a common set of adjudicative guidelines for determining eligibility for access to classified information . . . ." *Id.* at 40250. The most recent National Security Adjudicative Guidelines are in Security Executive Agent Directive 4 signed by then Director of National Intelligence James Clapper on December 10, 2016, effective June 8, 2017.

22.     Executive Order No. 12,968 § 5.2 mandates specific protections for any employee who is determined to not meet the standards for eligibility for access to classified information as follows:

Sec. 5.2. Review Proceedings for Denials or Revocations of Eligibility for Access.

(a) Applicants and employees who are determined to not meet the standards for access to classified information established in section 3.1 of this order shall be:

      (1) provided as comprehensive and detailed a written explanation of the basis for that conclusion as the national security interests of the United States and

8

other applicable law permit;

(2) provided within 30 days, upon request and to the extent the documents would be provided if requested under the Freedom of Information Act (5 U.S.C. 552) or the Privacy Act (3 [sic] U.S.C. 552a), as applicable, any documents, records, and reports upon which a denial or revocation is based;

(3) informed of their right to be represented by counsel or other representative at their own expense; to request any documents, records, and reports as described in section 5.2(a)(2) upon which a denial or revocation is based; and to request the entire investigative file, as permitted by the national security and other applicable law, which, if requested, shall be promptly provided prior to the time set for a written reply;

(4) provided a reasonable opportunity to reply in writing to, and to request a review of, the determination;

(5) provided written notice of and reasons for the results of the review, the identity of the deciding authority, and written notice of the right to appeal;

(6) provided an opportunity to appeal in writing to a high level panel, appointed by the agency head, which shall be comprised of at least three members, two of whom shall be selected from outside the security field. Decisions of the panel shall be in writing, and final except as provided in subsection (b) of this section; and

(7) provided an opportunity to appear personally and to present relevant documents, materials, and information at some point in the process before an adjudicative or other authority, other than the investigating entity, as determined by the agency head. A written summary or recording of such appearance shall be made part of the applicant's or employee's security record, unless such appearance occurs in the presence of the appeals panel described in subsection (a)(6) of this section.

*Id.* at 40252.

23.    While revocations of eligibility to access classified information have specific protections, under § 5.1 a determination that an "employee does not have, or no longer has, a need for access is a discretionary determination and shall be conclusive." *Id.*

24.    The FBI Employment Agreement states that its "provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information . . . ."

Furthermore, the agreement provides that "[t]he definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling."

25.     The applicability of Executive Orders regarding classified material to DOJ personnel, which includes FBI employees, is codified in the C.F.R. "All employees, contractors, grantees, and others granted access to classified information by [DOJ] are governed by this part, and by the standards in Executive Order 12958, Executive Order 12968, and directives promulgated under those Executive Orders. If any portion of this part conflicts with any portion of Executive Order 12958, Executive Order 12968, or any successor Executive Order, the Executive Order shall apply. This part supersedes the former rule and any Department internal operating policy or directive that conflicts with any portion of this part." 28 C.F.R. § 17.2(a).

26.     Under 28 C.F.R. § 17.11(c), "[t]he Department Security Officer may grant, deny, suspend, or revoke employee access to classified information pursuant to and in accordance with Executive Order 12968. The Department Security Officer may delegate the authority under this paragraph to qualified Security Programs Managers when the operational need justifies the delegation and when the Department Security Officer is assured that such officials will apply all access criteria in a uniform and correct manner in accord with the provisions of Executive Order 12968 and subpart C of this part."

27.     According to the C.F.R., DOJ established an "Access Review Committee" ("ARC") "to review all appeals from denials or revocations of eligibility for access to classified information under Executive Order 12968." 28 C.F.R. § 17.15(a). "The ARC shall consist of the Deputy Attorney General or a designee, the Assistant Attorney General for National Security or a designee, and the Assistant Attorney General for Administration or a designee. Designations must

be approved by the Attorney General." 28 C.F.R. § 17.15(b).

28.    Under 28 C.F.R. § 17.44(a), "Determinations of eligibility for access to classified information are separate from suitability determinations with respect to the hiring or retention of persons for employment by the [DOJ] or any other personnel actions."

29.    Under the C.F.R., "The number of employees eligible for access to classified information shall be kept to the minimum required for the conduct of [DOJ] functions." 28 C.F.R. § 17.44(b).

30.    According to the FBI's website, in addition to national security matters, it investigates public corruption, civil rights, transnational organized crime, white-collar crime, and violent crime, which do not require access to classified information. FBI, *What We Investigate*, *available at* https://www.fbi.gov/investigate (last accessed Jan. 15, 2026).

31.    Also, the C.F.R. mandates that "[e]ligibility for access to classified information shall be limited to classification levels for which there is a need for access. No person shall be granted eligibility higher than his or her need." 28 C.F.R. § 17.44(c).

32.    Under the C.F.R, "No person shall be granted access to specific classified information unless that person has an actual need-to-know that classified information, pursuant to section 2.5 of Executive Order 12968." 28 C.F.R. § 17.45.

33.    Under 28 C.F.R. § 17.47, DOJ personnel whose eligibility to access classified information is being revoked are provided a series of procedural protections, as follows:

(a) Applicants and employees who are determined to not meet the standards for access to classified information established in section 3.1 of Executive order 12968 shall be:

    (1) Provided with a comprehensive and detailed written explanation of the basis for that decision as the national security interests of the United States and other applicable law permit and informed of their right to be represented by counsel or other representative at their own expense;

(2) Permitted 30 days from the date of the written explanation to request any documents, records, or reports including the entire investigative file upon which a denial or revocation is based; and

(3) Provided copies of documents requested pursuant to this paragraph (a) within 30 days of the request to the extent such documents would be provided if requested under the Freedom of Information Act (5 U.S.C. 552) or the Privacy Act of 1974 (5 U.S.C. 552a), and as the national security interests and other applicable law permit.

(b) An applicant or employee may file a written reply and request for review of the determination within 30 days after written notification of the determination or receipt of the copies of the documents requested pursuant to this subpart, whichever is later.

(c) An applicant or employee shall be provided with a written notice of and reasons for the results of the review, the identity of the deciding authority, and written notice of the right to appeal.

(d) Within 30 days of receipt of a determination under paragraph (c) of this section, the applicant or employee may appeal that determination in writing to the ARC, established under § 17.15. The applicant or employee may request an opportunity to appear personally before the ARC and to present relevant documents, materials, and information.

(e) An applicant or employee may be represented in any such appeal by an attorney or other representative of his or her choice, at his or her expense. Nothing in this section shall be construed as requiring [DOJ] to grant such attorney or other representative eligibility for access to classified information, or to disclose to such attorney or representative, or permit the applicant or employee to disclose to such attorney or representative, classified information.

(f) A determination of eligibility for access to classified information by the ARC is a discretionary security decision. Decisions of the ARC shall be in writing and shall be made as expeditiously as possible. Access shall be granted only where facts and circumstances indicate that access to classified information is clearly consistent with the national security interest of the United States, and any doubt shall be resolved in favor of the national security.

(g) The Department Security Officer shall have an opportunity to present relevant information in writing or, if the applicant or employee appears personally, in person. Any such written submissions shall be made part of the applicant's or employee's security record and, as the national security interests of the United States and other applicable law permit, shall also be provided to the applicant or employee. Any personal presentations shall be, to the extent consistent with the

national security and other applicable law, in the presence of the applicant or employee.

(h) When the Attorney General or Deputy Attorney General personally certifies that a procedure set forth in this section cannot be made available in a particular case without damaging the national security interests of the United States by revealing classified information, the particular procedure shall not be made available. This is a discretionary and final decision not subject to further review.

34.     While access to classified information is a discretionary function and can be suspended, there is no provision in Executive Order No. 12,968 or the portions of the C.F.R. applicable to DOJ personnel that authorizes the suspension of eligibility to access classified material once eligibility has been determined. The only means to remove an individual's eligibility to access classified material is through the procedures provided under Executive Order No. 12,968 and the C.F.R.

35.     Eligibility to access classified information is commonly referred to as having a "security clearance" or "clearance."

36.     Under 50 U.S.C. § 3341(d)(1), "All security clearance background investigations and determinations completed by an authorized investigative agency or authorized adjudicative agency shall be accepted by all agencies."

37.     Security Executive Agent Directive 7 signed by then Director of National Intelligence Daniel Coats on November 9, 2018, "establishes requirements for reciprocal acceptance of background investigations and national security adjudications for initial or continued eligibility for access to classified information or eligibility to hold a sensitive position."

38.     A security clearance is often helpful in obtaining federal employment and contracting jobs.

39.     Under 5 U.S.C. § 6329b, agencies can place employees on investigative leave where the employees continue to receive pay but do not perform duties during the course of an

investigation. Through different levels of internal approval, the agency can approve 130 workdays of administrative and investigative leave. *Id.* §§ 6329b(b)(1),(b)(3)(A),(c). After that 130-workday period, the agency can approve additional 30-day periods of leave, as long as it notifies congressional committees of those extensions. *Id.* § 6329b(d)(1).

## III.    PLAINTIFF'S FBI EMPLOYMENT AND SUSPENSION FROM DUTY.

40.    During February 2013, Plaintiff entered on duty as an FBI special agent. He is not a preference-eligible veteran. Prior to his employment with the FBI, he served as a police officer for five years.

41.    Plaintiff was deemed eligible to access Top Secret classified national security information, i.e., granted a "clearance,"[2] when he entered on duty with the FBI.

42.    Although Plaintiff does not have a copy of his signed FBI Employment Agreement, he executed this agreement to accept employment with the FBI.

43.    After completing new agent's training at Quantico, Virginia, Plaintiff was assigned to the FBI's field office in New York, New York. In February 2015, he was assigned to conduct counterterrorism investigations. Approximately during February 2015, Plaintiff completed his probationary period as an FBI employee.

44.    Plaintiff was later promoted to the position of supervisory special agent over the New York Joint Terrorism Task Force ("JTTF") Threat Response Squad and became Acting Assistant Special Agent in Charge of the JTTF. During his assignments in New York, he led the FBI in terrorism disruptions targeting ISIS, received the Executive Office for U.S. Attorneys Director's Award for Superior Performance in Prevention and Reentry Activities relating to

---

[2] For the remainder of this complaint, the Plaintiff will refer to his eligibility to access classified information as a "security clearance" or "clearance," with the understanding that the quoted Executive Orders and regulations refer to a "clearance" as "eligibility" or "eligibility to access" classified information.

innovative terrorism disruption strategies, and was awarded the Exemplary Performance Award by the New York Counterterrorism Division, largely in recognition for leading the FBI's largest operational squad in 24/7 threat response operations.

45.    The New York Division where Plaintiff worked has a Sensitive Compartmented Information Facility ("SCIF") in the office where many employees assigned to national security matters requiring access to classified material perform their duties. Many employees in the New York Division conduct investigations unrelated to national security. Those employees work outside of the SCIF.

46.    During February 2022, Plaintiff was promoted to an Assistant Section Chief position at FBI Headquarters in Washington, DC.

47.    On or about May 3, 2022, an FBI employee filed an internal complaint against Plaintiff alleging off-duty misconduct that was unrelated to national security matters.

48.    On May 6, 2022, only three days after a complaint was filed against Plaintiff, his security clearance to access classified national security material was suspended.

49.    Plaintiff was notified of the suspension of his security clearance in a letter dated May 6, 2022, from Jennifer Leigh Moore, Acting Executive Assistant Director, FBI Human Resources Branch with a return address of "U.S. Department of Justice, Federal Bureau of Investigation, Washington, DC 20535-0001." In the letter, Moore notified Plaintiff that the basis for the suspension of his clearance was allegations it learned of on May 4, 2022, two days before the decision to suspend his clearance.

50.    Moore also wrote, "The suspension of your clearance will continue until the FBI investigation of the underlying matter is completed. At that time, your clearance status will be re-evaluated, and you will be advised accordingly."

51.     Moore's letter further notified Plaintiff that the

suspension of an employee's access to classified information results in loss of access to controlled FBI space. Accordingly, while your clearance is suspended, you will not be allowed access to FBI space. In addition, you are reminded that while on suspension, you may not represent yourself as an FBI employee, and your authority to fulfill the duties and responsibilities of your position is also suspended.

52.     The FBI did not serve Moore's letter on Plaintiff until May 21, 2022, approximately fifteen days after deciding to suspend his clearance. For those fifteen days, Plaintiff remained on duty working inside a SCIF at FBI Headquarters.

53.     The FBI had favorably adjudicated Plaintiff's periodic security clearance re-investigation in December 2021, less than six months prior to the suspension.

54.     In a letter dated May 10, 2022, Katherine Brideau, the Unit Chief for the FBI's Performance Appraisal Unit, Human Resources Division with a return address of "U.S. Department of Justice, Federal Bureau of Investigation, Washington, DC 20535-0001," notified Plaintiff of the following:

This letter advises that you are suspended indefinitely from duty and pay effective upon receipt of this letter. This action is based upon the decision of Jennifer Leigh Moore, Federal Bureau of Investigation (FBI) Security Programs Manager, Human Resources Branch, to suspend your Top Secret security clearance and access to classified information. Your suspension will be in effect pending the final resolution of all security actions including investigation, adjudication, and any related appeals regarding your eligibility for access to classified information, and/or a determination of whether or not further administrative action is warranted.

55.     Brideau's letter also asserted that, "[i]t has been a longstanding, essential condition of employment that employees of the FBI be able to obtain and maintain a Top Secret security clearance," but she cited no authority for that claim.

56.     Nothing in the FBI Employment Agreement states that FBI employees are required to maintain their clearance to access classified information.

57.     Although Plaintiff's position at FBI Headquarters occasionally required access to

classified information, he could have been reassigned to a position in the vicinity of his assignment working criminal matters that had nothing to do with national security and did not require access to classified information, such as the FBI's Washington Field Office that conducts a substantial number of criminal investigations.

58.     Plaintiff received his last paycheck from the FBI in approximately July 2022.

59.     On March 20, 2025, the FBI's Office of Professional Responsibility ("FBI OPR"), which is responsible for adjudicating administrative disciplinary matters, determined that the allegation precipitating the suspension of his clearance was unsubstantiated and Plaintiff's conduct did not merit removal from the FBI.

60.     On May 21, 2025, Plaintiff was notified that the FBI had decided to revoke his security clearance, pending a request for reconsideration. Even though the FBI OPR determined that the allegation precipitating the clearance suspension was unfounded and his behavior did not merit removal, the FBI was using the clearance process to remove him from the FBI.

61.     Plaintiff's clearance was suspended for a period of approximately three years with no deadline. He was suspended indefinitely without pay during that period. He has not been able to get other federal employment. Also, he has not earned credit towards a federal retirement since he has not taken any job with the federal government. During his suspension, he did not receive the evidence the FBI relied upon to suspend his security clearance that resulted in his indefinite suspension, nor did he have a hearing to refute the allegations made against him. Plaintiff had no administrative remedy to challenge his indefinite suspension without pay.

62.     The FBI did not place Plaintiff on investigative leave which the FBI has the authority to do under 5 U.S.C. § 6329b while his security clearance was suspended.

63.     According to records in this Court, the FBI has engaged in a similar lengthy

17

indefinite suspension without pay in at least one other case. In *Lee v. Barr*, the FBI suspended an employee indefinitely without pay from December 2014 until the FBI's final determination to seek the revocation of his security clearance in August 2016. No. 19-2284-DLF (D.D.C. Jan. 6, 2020) (DOJ ARC Report, Exhibit to Lee's Motion to Amend Complaint) [ECF Doc. 12-4] at 1, 3. DOJ's ARC made a final decision revoking the employee's clearance on May 30, 2018, almost four years after his suspension began. *Id.* at 1.

## COUNT ONE

**Suspension of Plaintiff's Security Clearance Was an Ultra Vires Violation of the FBI's Authority Under the Constitution, Executive Orders, and C.F.R.**

64.    The foregoing allegations are re-alleged and incorporated herein by reference.

65.    The Executive's national security powers stem from the fact that the President is "Commander in Chief of the Army and Navy of the United States." U.S. CONST. art. II, § 2.

66.    On August 2, 1995, under his authority as Commander in Chief of the Army and Navy of the United States, then President William Clinton issued Executive Order No. 12,968.

67.    Under Executive Order No. 12,968 § 2.1(a), "[d]eterminations of eligibility for access to classified information shall be based on criteria established under this order. Such determinations are separate from suitability determinations with respect to the hiring or retention of persons for employment by the government or any other personnel actions."

68.    Under Executive Order No. 12,968 § 1.2(a), in order to access classified information, an employee must be "eligible," referred to as having a "clearance," and they must "possess a need-to-know."

69.    While Executive Order No. 12,968 § 5.1 provides that a determination "that an employee does not have, or no longer has, a need for access is a discretionary determination and shall be conclusive," § 5.2 provides mandatory review proceedings before an employee's clearance

to access classified material is revoked. There is no procedure to "suspend" an employee's clearance to access classified material under the Executive Order.

70.    Instead of authorizing the suspension of an employee's clearance, Executive Order No. 12,968 provides a procedure to revoke a clearance. However, the FBI did not tell Plaintiff that it intended to revoke his clearance for approximately three years.

71.    Under § 5.2(a)(2) of Executive Order No. 12,968, before an employee's clearance may be revoked, that employee is entitled to "within 30 days, upon request and to the extent the documents would be provided if requested under the Freedom of Information Act (5 U.S.C. 552) or the Privacy Act (3 [sic] U.S.C. 552a), as applicable, any documents, records, and reports upon which a denial or revocation is based." Similarly, under § 5.2(a)(3), an employee is entitled "to request any documents, records, and reports as described in section 5.2(a)(2) upon which a denial or revocation is based; and to request the entire investigative file, as permitted by the national security and other applicable law, which, if requested, shall be promptly provided prior to the time set for a written reply." The Plaintiff's clearance was suspended without being provided any such records.

72.    Under Executive Order No. 12,968 § 5.2(a)(4), before an employee's security clearance may be revoked, an employee is entitled to "a reasonable opportunity to reply in writing to, and to request a review of, the determination." The Plaintiff was provided no such opportunity before his clearance was suspended.

73.    Under Executive Order No. 12,968 § 5.2(a)(5), before an employee's security clearance may be revoked, an employee is entitled to "written notice of and reasons for the results of the review, the identity of the deciding authority, and written notice of the right to appeal." The Plaintiff was provided no opportunity to appeal the suspension of his security clearance.

74.    Under Executive Order No. 12,968 § 5.2(a)(6), before an employee's security clearance may be revoked, an employee is entitled to "an opportunity to appeal in writing to a high level panel." The Plaintiff had no such opportunity before his clearance was suspended, nor had he been provided that opportunity while his clearance was suspended.

75.    Under Executive Order No. 12,968 § 5.2(a)(7), before an employee's security clearance may be revoked, an employee is entitled to "an opportunity to appear personally and to present relevant documents, materials, and information at some point in the process before an adjudicative or other authority, other than the investigating entity, as determined by the agency head. A written summary or recording of such appearance shall be made part of the applicant's or employee's security record, unless such appearance occurs in the presence of the appeals panel . . . ." The Plaintiff was provided no such opportunity before his clearance was suspended, nor was he provided that opportunity while his clearance was suspended.

76.    The applicability of Executive Orders regarding classified material to DOJ personnel is codified in the C.F.R. "All employees, contractors, grantees, and others granted access to classified information by [DOJ] are governed by this part, and by the standards in Executive Order 12958, Executive Order 12968, and directives promulgated under those Executive Orders. If any portion of this part conflicts with any portion of Executive Order 12958, Executive Order 12968, or any successor Executive Order, the Executive Order shall apply. This part supersedes the former rule and any Department internal operating policy or directive that conflicts with any portion of this part." 28 C.F.R. § 17.2(a).

77.    Under 28 C.F.R. § 17.11(c), "[t]he Department Security Officer may grant, deny, suspend, or revoke employee access to classified information pursuant to and in accordance with Executive Order 12968. The Department Security Officer may delegate the authority under this

paragraph to qualified Security Programs Managers when the operational need justifies the delegation and when the Department Security Officer is assured that such officials will apply all access criteria in a uniform and correct manner in accord with the provisions of Executive Order 12968 and subpart C of this part."

78.     Under 28 C.F.R. § 17.47, DOJ personnel are provided the procedural protections under Executive Order No. 12,968 before the revocation of their eligibility to access classified information, referred to as having a "clearance." There is no provision under the C.F.R. to suspend a DOJ employee's clearance/eligibility to access classified information.

79.     Under the FBI Employment Agreement, its "provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information . . . ."

80.     The agreement also states that, "[t]he definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling."

81.     Although a determination regarding an individual's access to classified material is conclusive, there is no provision in the Executive Order or C.F.R. to "suspend" a clearance.

82.     Because the Plaintiff was provided none of the procedural protections required under Executive Order No. 12,968 and the C.F.R., there is no provision in the Executive Order or C.F.R. to "suspend" a clearance, and the FBI Employment Agreement incorporates Executive Order No. 12,968 and makes it "controlling," the May 6, 2022, decision by the FBI to suspend Plaintiff's clearance to access classified information without procedural protections was an ultra vires action in violation of Article II of the U.S. Constitution, Executive Order No. 12,968, 28 C.F.R. §§ 17.2(a), 17.11(c), 17.47, and the FBI Employment Agreement.

## COUNT TWO

**Suspension of Plaintiff's Security Clearance Violated the Fifth Amendment**

83.     The foregoing allegations are re-alleged and incorporated herein by reference.

84.     Under 50 U.S.C. § 3341(d)(1), "All security clearance background investigations and determinations completed by an authorized investigative agency or authorized adjudicative agency shall be accepted by all agencies."

85.     Security Executive Agent Directive 7 signed by then Director of National Intelligence Daniel Coats on November 9, 2018, "establishes requirements for reciprocal acceptance of background investigations and national security adjudications for initial or continued eligibility for access to classified information or eligibility to hold a sensitive position."

86.     A security clearance is often helpful in obtaining federal employment and contracting jobs.

87.     Considering the procedural protections provided by Executive Order No. 12,968 and the C.F.R., Executive Order No. 12,968's incorporation into the FBI Employment Agreement, and the portability of security clearances to other agencies where it is often a prerequisite for employment and contracting jobs, the Plaintiff had a protected property interest in his security clearance.

88.     The Plaintiff's clearance was suspended without proper notice and without a meaningful opportunity to respond.

89.     Thus, the May 6, 2022, decision to suspend Plaintiff's clearance to access classified information was in violation of the procedural protections of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

## COUNT THREE

**Suspension of Plaintiff's Security Clearance Was in Violation of the
Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A), (B), and (D)**

90.     The foregoing allegations are re-alleged and incorporated herein by reference.

91.     Considering the procedural protections provided by Executive Order No. 12,968 and the C.F.R., and Executive Order No. 12,968's incorporation into the FBI Employment Agreement, the May 6, 2022, decision to suspend Plaintiff's clearance to access classified information without the procedural protections for eligibility mandated by Executive Order No. 12,968 and the C.F.R. was arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; and without observance of procedure required by law in violation of 5 U.S.C. §§ 706(2)(A), (B), and (D).

## COUNT FOUR

**Indefinite Suspension of Plaintiff from Duty Without Pay Was Ultra Vires Violation of the
FBI's Authority Under the U.S. Constitution and Executive Orders**

92.     The foregoing allegations are re-alleged and incorporated herein by reference.

93.     The Executive's national security powers stem from the fact that the President is "Commander in Chief of the Army and Navy of the United States." U.S. CONST. art. II, § 2.

94.     On August 2, 1995, under his constitutional authority, then President William Clinton issued Executive Order No. 12,968.

95.     Executive Order No. 12,968 § 1.1(h) defines "need-to-know" as "a determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function."

96.     Under Executive Order No. 12,968 § 1.2(a), in order to access classified

information, an employee must be "eligible," referred to as having a "clearance," and they must "possess a need-to-know."

97. Under Executive Order No. 12,968 § 1.2(c), "Employees shall not be granted access to classified information unless they: . . . . (2) have a demonstrated need-to-know."

98. Under Executive Order No. 12,968 § 2.1(a), "[d]eterminations of eligibility for access to classified information shall be based on criteria established under this order. Such determinations are separate from suitability determinations with respect to the hiring or retention of persons for employment by the government or any other personnel actions."

99. Under Executive Order No. 12,968 § 2.1(b):

The number of employees that each agency determines are eligible for access to classified information shall be kept to the minimum required for the conduct of agency functions.

(1) Eligibility for access to classified information shall not be requested or granted solely to permit entry to, or ease of movement within, controlled areas when the employee has no need for access and access to classified information may reasonably be prevented. Where circumstances indicate employees may be inadvertently exposed to classified information in the course of their duties, agencies are authorized to grant or deny, in their discretion, facility access approvals to such employees based on an appropriate level of investigation as determined by each agency.

(2) Except in agencies where eligibility for access is a mandatory condition of employment, eligibility for access to classified information shall only be requested or granted based on a demonstrated, foreseeable need for access. Requesting or approving eligibility in excess of actual requirements is prohibited.

100. Under Executive Order No. 12,968 § 2.2(a), "[t]he level at which an access approval is granted for an employee shall be limited, and relate directly, to the level of classified information for which there is a need for access."

101. On December 29, 2009, under his constitutional authority, then President Barack Obama issued Executive Order No. 13,526.

102.     Under Executive Order No. 13,526 § 4.1(a)(3), only individuals with a "need-to-know" are allowed to have access to classified material.

103.     Under 28 C.F.R. § 17.44(a), "Determinations of eligibility for access to classified information are separate from suitability determinations with respect to the hiring or retention of persons for employment by the [DOJ] or any other personnel actions."

104.     Under the C.F.R., "The number of employees eligible for access to classified information shall be kept to the minimum required for the conduct of [DOJ] functions." 28 C.F.R. § 17.44(b).

105.     Also, the C.F.R. mandates that "[e]ligibility for access to classified information shall be limited to classification levels for which there is a need for access. No person shall be granted eligibility higher than his or her need." 28 C.F.R. § 17.44(c).

106.     Under 28 C.F.R. § 17.45, "No person shall be granted access to specific classified information unless that person has an actual need-to-know that classified information, pursuant to section 2.5 of Executive Order 12968."

107.     According to the FBI's website, in addition to national security matters, it investigates public corruption, civil rights, transnational organized crime, white-collar crime, and violent crime, which do not require access to classified information. FBI, *What We Investigate*, *available at* https://www.fbi.gov/investigate (last accessed Jan. 15, 2026).

108.     The FBI Employment Agreement does not require that an employee maintain a security clearance.

109.     Under the FBI Employment Agreement, its "provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information . . . ."

110.    The agreement also states that, "[t]he definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling."

111.    Although Plaintiff's position occasionally required access to classified information, he could have been reassigned to a position in the vicinity of his assignment working criminal or administrative matters that had nothing to do with national security and did not require access to classified information.

112.    The decision to suspend Plaintiff from employment indefinitely without pay from May 10, 2022, through the present, by requiring him to maintain clearance to access Top Secret classified information when he had no need-to-know such information to perform lawful duties with the FBI and when the FBI Employment Agreement includes no such requirement, was an ultra vires violation of Article II of the U.S. Constitution, Executive Order No. 12,968, Executive Order No. 13,526, the C.F.R., and the FBI Employment Agreement.

## COUNT FIVE

### Indefinite Suspension of Plaintiff from Duty Without Pay Violated the Fifth Amendment

113.    The foregoing allegations are re-alleged and incorporated herein by reference.

114.    Considering the Merit System Principles mandated by Congress in 5 U.S.C. § 2301, the FBI's elaborate disciplinary system, the FBI Employment Agreement's failure to require that employees maintain a security clearance and failure to notify employees that they can be fired at will, the FBI's probationary period for new employees, and the mandates in Executive Order Nos. 12,968 and 13,526 and the C.F.R. that only employees with a need-to-know classified information can be given access to it, Plaintiff had a protected property interest in his continued employment with the FBI after he completed his probationary period.

115.    The decision to suspend Plaintiff from employment indefinitely without pay from May 10, 2022, through the present, without proper notice and a meaningful opportunity to respond, was in violation of the procedural protections of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests relief as follows:

116.    A declaration that the FBI's actions violated the United States Constitution.

117.    An injunction requiring the FBI to reinstate Plaintiff's employment investigating criminal matters that do not require access to classified material, with full back pay and benefits.

118.    An injunction requiring the FBI to reinstate the Plaintiff's clearance to access classified material, but not necessarily access to classified material, at least until such time as the procedural protections mandated by Executive Order No. 12,968 and the C.F.R. have been completed.

119.    An injunction prohibiting the FBI from suspending security clearances of any employee or contractor for eligibility reasons without the procedural protections mandated by Executive Order No. 12,968 and the C.F.R.

120.    An injunction prohibiting the FBI from suspending any employee indefinitely without pay simply for losing access to classified material.

121.    Costs and reasonable attorney fees.

122.    Such other relief as this Court deems just and equitable.

January 16, 2026                          Respectfully Submitted,

_/s/ Michael S. Zummer_
Michael S. Zummer
(Bar ID LA0013/La. Bar No. 31375)
2337 Magazine St. Unit D
New Orleans, LA 70130
Telephone: (504) 717-5913
E-mail: afbilitigation@gmail.com
_Counsel for Plaintiff_